George DAVIS and Southwestern Investment Co., Appellants,

v.

Tommie LEWIS dba Tommie Lewis Paint & Body Shop, Appellee.

No. 8292.

Court of Civil Appeals of Texas, Amarillo.

Nov. 13, 1972.

Clayton & Clayton, Cleo G. Clayton, Jr., Amarillo, for appellants.

Maner & Nelson, Loyd N. Jones, Lubbock, for appellee.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

Our original opinion reversing the judgment of the trial court and rendering judgment for appellants is withdrawn, and the following opinion, issued sequentially to appellee's motion for rehearing, is substituted therefor:

This appeal relates to an action for tortious interference with business relations. Following the entry of a judgment based on a jury verdict awarding plaintiff-appellee Tommie Lewis, d/b/a Tommie Lewis Paint & Body Shop, actual and exemplary damages against defendant-appellants George Davis and Southwestern Investment Company, appellants have presented sixteen points of error for consideration. Reversed and rendered.

Tommie Lewis is engaged in the repair and painting of automobiles in Littlefield under the business name of Tommie Lewis Paint & Body Shop. George Davis is the manager of the Littlefield branch office of Southwestern Investment Company, refered to as SIC, which, as shown by this record, finances automobile purchases by individuals. SIC had financed the acquisition of, and was a lienholder under its security interest in, an automobile purchased by George Brockington. An insurance policy was secured on the automobile with losses covered payable to Brockington and SIC as its interest appeared.

The Brockington automobile incurred collision damage. Brockington was requested to, and did, secure three cost-of-repair estimates. One of the estimates was given by Lewis. Subsequently, the damage was repaired by one of the estimators other than Lewis.

Lewis brought suit against Davis and SIC, and against two other parties who were exonerated by an instructed verdict from which Lewis has not appealed. So far as this appeal is concerned, Lewis sought to establish a tortious interference by, and actuated by malice on the part of, Davis, as agent of SIC, with his business relations with Brockington, resulting in his loss of a contract to repair Brockington's automobile. Appellants answered with

general and special denials and the defense of privilege and justification.

On the trial, the son of Lewis, who worked at the shop, testified that Brockington, in securing the estimate, said he wanted Lewis to repair his car and would bring it in. A few hours later Brockington returned and said "they" (presumably Davis and SIC) would not let him have his car repaired at Lewis' shop. This witness admitted he told Brockington he could have the damage fixed by anyone and would not hold Brockington to any agreement. Brockington corroborated this testimony, and said that when he took the three estimates to Davis and expressed his preference, Davis "said that I couldn't get it fixed down there . . . that they had some kind of trouble down there, some kind of suit or something against them." Parenthetically, it is observed that previously a question had arisen between Lewis and Davis over the completeness of the repairs Lewis had made to a damaged automobile, financed by SIC and protected by automobile insurance, belonging to Raymond Coronado. Additionally, while Coronado's car was being repaired, Lewis loaned Coronado a car that was damaged while in Coronado's possession, and Lewis instituted suit against Coronado to recover for the other items of claimed damages not acknowledged and paid for by the insurance company.

This record does not reflect, and Brockington said that he did not remember, which of the three estimates he secured was the lowest, but previously Brockington had signed a statement reciting that Lewis was not the lowest bidder. Irrespectively, Brockington further testified that he would have had Lewis repair his car except for what he was told by Davis, although he had not obligated himself to anyone for the repairs and knew at the times he secured the estimates that it was still a question as to who was going to repair the car. Brockington recognized that SIC had a lien on his car, that SIC had an investment to protect, that he did not question SIC's right to see that the car was properly repaired, and that the insurance proceeds were payable to both him and SIC. Further, Brockington stated that when he visited the shop that did repair his car and objected to a used door being installed instead of a new door allowed by the adjuster, ". . . I was told that there was going to be a used door put on the car and there wasn't anything I could do about it because the company had just as big a lien on it as I did." There was no elaboration on this testimony and it is speculative who made the statement to Brockington and whether he was told, or he recognized, that SIC's lien interest was as great as his equity in the car. The record is silent as to the value of the car, Brockington's equity therein, or the amount of indebtedness owed to SIC and secured by its lien.

An insurance company adjuster, who formerly was employed by the insurance company carrying the coverage on Brockington's automobile, testified that in a conversation with Davis, "I was told if he was going to sue one of our customers, not to take any work to Tommie Lewis Body Shop for that reason." This witness admitted that Davis told him about Lewis charging for some work not done on the Coronado car.

Upon submission, the jury found that Davis, with malice, adversely persuaded Brockington not to authorize Lewis to repair the automobile, and that Lewis was entitled to actual damages of $343.01 for lost profits and $1,000.00 punitive damages. The privilege and justification relied upon by appellants was not an issue before the jury; the omission of issues was not objected to and no substantially correct issues were tendered for submission.

In several of the points of error, appellants position the appeal on the proposition that appellee's evidence establishes as a matter of law that their interference, if any, was justified and privileged in the exercise of their respective legitimate business interests. We agree and sustain these points of error.

On this appeal the issue is not an interference with contractual rights, but rather an interference with a business relationship. The parties are agreed that one has a general duty not to interfere with another's business relations unless the interference is privileged under the circumstances. Although the legal prescript has been stated in multiform legalism, it long has been established in Texas that interference with another's business relations with a third party is actionable if the interference is motivated by malice and no useful purpose of the inducing party is subserved. Delz v. Winfree, 80 Tex. 400, 16 S.W. 111 (1891); Olive v. Van Patten, 7 Tex.Civ. App. 630, 25 S.W. 428 (1894); Celli & Del Papa v. Galveston Brewing Co., 227 S.W. 941 (Tex.Comm'n App.1921, opinion adopted); Griffin v. Palatine Ins. Co., 235 S.W. 202 (Tex.Comm'n App.1921, opinion adopted). Conversely, one may lawfully induce another to refrain from having business relations with a third person, although it injuriously affects such third person, provided his action be to some legitimate interest of his own, and no definite legal rights, such as contract rights, are thereby violated. Celli & Del Papa v. Galveston Brewing Co., supra; Griffin v. Palatine Ins. Co., supra. Further, one who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor does not employ improper means and acts to protect his interest from being prejudiced by his relations. Restatement of Torts, § 769.

The evidence adduced through the witness Brockington, called by Lewis, is undisputed that, although not bound by any agreement, he would have had Lewis, whose repair estimate was not shown to be the low bid, repair the car except for adverse persuasion by Davis; that he knew SIC had an investment in the car, perhaps as much as Brockington did, to protect; that he recognized that SIC had an interest in seeing, and the right to see, that the car was properly repaired; and that he did not question the exercise of SIC's right to see that the car was properly repaired. Although the insurance policy is not shown in this record, the general rule is that SIC, as mortgagee under the policy, had the right, unless relinquished, to retain the proceeds payable under the policy and apply them to Brockington's obligation, or apply so much thereof as was required to liquidate the debt. Minniefield v. Consolidated Lloyds, 316 S.W.2d 428 (Tex.Civ.App.— Beaumont 1958, no writ).

Thus, viewing the evidence in the light most favorable to appellee in connection with the legal principles involved, the adverse persuasion found by the jury does not render appellants liable since the evidence establishes that appellants did not violate any definite contract rights of appellee and that appellants acted to preserve their own legitimate business interests. Brockington, as he realized, had the legal right to reject the bid made by Lewis, and appellants, in furtherance of their financial interest in Brockington's business and relinquishment of the right to hold the insurance proceeds, had the legal right to persuade or attempt to persuade Brockington to exercise his right. Kingsbery v. Phillips Petroleum Company, 315 S.W.2d 561 (Tex.Civ.App.—Austin 1958, writ ref'd n. r.e.).

In his motion for rehearing, appellee contends that the evidence concerning the Coronado lawsuit at the very least raised a fact issue as to whether appellants acted out of malice toward appellee or acted in a bona fide exercise of their own rights. It follows, appellee argues, that the jury finding of malice negates the bona fide exercise of appellants' rights, and this court could not say as a matter of law that appellants acted to preserve their own legitimate business interest. We find the law to be adverse to appellee's contention. As stated previously, business relations interference is actionable only if both malice *and* illegal action combine to produce an

injury. Appellants' actions were lawful in the protection of their own business interests, and in that event, not only will the law not notice that appellants may have entertained malice toward appellee, but the improper motive of malice—if in fact the evidence does support the jury's finding of malice, an issue we do not reach—even if noticed does not render appellants' actions illegal. Griffin v. Palatine Ins. Co., supra.

As shown by appellee's evidence, the persuasion on the part of appellants was privileged and justified in the pursuit of their own legitimate business interests, and precludes recovery by appellee. A further discussion of appellants' remaining points of error is unnecessary.

Appellee's motion for rehearing is overruled. The judgment of the trial court is reversed, and judgment is rendered for appellants.